**HERKY, LLC,**

and

**JHB Properties, Inc., Appellants,**

v.

**Randy HOLMAN, Assessor of Jefferson County, Missouri, Respondent.**

No. ED 91255.

Missouri Court of Appeals,
Eastern District,
Division Two.

Nov. 25, 2008.

Motion for Rehearing and/or Transfer to Supreme Court Denied Feb. 4, 2009.

Application for Transfer Denied March 31, 2009.

James P. Bick, Jr., St. Louis, MO, for Appellants.

David P. Senkel, David C. Mangan, Hillsboro, MO, for Respondent.

ROY L. RICHTER, Presiding Judge.

Herky, LLC and JHB Properties, Inc. ("Developers") appeal the trial court's judgment affirming the State Tax Commission's ("Commission") dismissal of Developers' challenges to property assessments. We reverse.

## I. BACKGROUND

The relevant facts are not in dispute. The Developers acquire and develop land in order to sell it to residential home builders. As of January 2005, Herky owned 146 properties and JHB owned 83. All lots were located in Jefferson County, Missouri. The Jefferson County Assessor, Randy Holman ("Assessor"), assessed the fair market value of all the lots in 2005. On March 30, 2005, Assessor issued reassessment notices to the Developers regarding each of their properties.

The Developers subsequently began selling their respective properties. Herky sold 103 lots on June 17, 2005 and 37 lots on June 23, 2005. Herky still owned six of its lots at the end of 2005. JHB sold 82 lots on June 8, 2005, and the one remaining lot on August 12, 2005.

On June 23, 2005, the Developers appealed the Assessor's increased valuation of their properties to the Jefferson County Board of Equalization ("Board"). When the Board denied their claims, the Developers appealed to the Commission Hearing Officer on August 17, 2005.

Before the Hearing Officer, the Assessor filed three motions to dismiss against Herky and two against JHB. As to Herky, Assessor's motions to dismiss claimed that Herky: (1) was not the real party in interest with respect to 132 properties; (2) had paid the property taxes delinquently and therefore they were no longer recoverable with respect to 32 properties; and (3) had not paid the taxes in protest with respect to 8 properties. With regards to JHB, Assessor's motions alleged that JHB: (1) was not the real party in interest as to all 86 properties; and (2) had not paid the taxes in protest with respect to 4 properties.

The Hearing Officer granted three of the Assessor's motions to dismiss, thereby dismissing all of JHB's appeals and all but seven of Herky's. The Officer held that neither Herky nor JHB was a real party in interest because they no longer owned the properties and therefore did not have standing to appeal the property assessments.[1] The Officer also dismissed 32 of

---

1. The Hearing Officer's decision on the real party in interest issue was identical as to both Herky and JHB.

Herky's appeals on the basis that Herky had paid the property taxes delinquently and therefore they were no longer recoverable.

Developers appealed the Hearing Officer's decision to the Commission. The Commission affirmed the Officer's decision in all respects. The Developers then sought judicial review. The trial court affirmed the Commission's decision.

The Developers appeal.

## II. DISCUSSION

■ On appeal, this Court examines the underlying decision of the administrative agency, the Commission, and not that of the trial court. *Cohen v. Bushmeyer,* 251 S.W.3d 345, 348 (Mo.App. E.D.2008). When the Commission's decision is based on its interpretation and application of law, we review its conclusions of law de novo. *Id.*

■ In their first and second points on appeal, the Developers argue that the Commission erred in dismissing their appeals because the Developers are the real parties in interest. We agree.

■ Rule 52.01 requires a civil action to be prosecuted in the name of the real party in interest. Mo. R. Civ. P. 52.01. Real parties in interest are those who are directly interested in a lawsuit's subject matter. *Welch v. Davis,* 114 S.W.3d 285, 292 (Mo.App. W.D.2003). The purpose of the Rule is to enable those who are interested in the subject matter of the action and entitled to the benefits of the litigation to be those who maintain the action. *Twin Chimneys Homeowners Ass'n v. J.E. Jones Constr. Co.,* 168 S.W.3d 488, 495 (Mo.App. E.D.2005).

The Commission's Order relied on three statutes in holding that Developers were not the real parties in interest. First, it cited Section 138.430.1 RSMo Cum. Supp. 2007[2] which states that: "[e]very owner of real property or tangible personal property shall have the right to appeal from the local boards of equalization to the state tax commission under rules prescribed by the state tax commission." The Order also cited Sections 137.170 and 140.640 which state, in sum, that property taxes in Missouri run with the land and do not constitute a personal lien. The Commission concluded that because the Developers no longer owned the property, they could not maintain the present action.

"In order to determine the real party in interest in this case, we look to the facts as they appear on the record." *Carolan v. Nelson,* 226 S.W.3d 923, 926 (Mo.App. W.D.2007) (quoting *Smith v. Cowen,* 350 S.W.2d 96, 98 (Mo.App. W.D.1961)). The Commission's Order in this case disregards that the Developers had a continuing interest in the property, and that they were directly affected by the increased property value assessment. Upon selling the property in question, the Developers entered into proration agreements with the new property owners. Per these agreements, the Developers were responsible for the property taxes on the land in question from January 2005 through June 2005. When the Assessor assigned increased property values to the land for 2005, the Developers' prorated share of the property taxes likewise increased.

Although the Developers were not the legal property owners when they filed their appeal, they were nonetheless the real parties in interest under the facts of this case because they retained an interest in the litigation by virtue of the proration agreements. Thus, they stood to enjoy the benefits of a successful appeal. *See*

---

**2.** All further statutory citations are to RSMo 2007.

*Twin Chimneys*, 168 S.W.3d at 496 (holding that, while the homeowners association was not the legal owner of the common areas, they were nonetheless the real party in interest in a suit against a construction company for negligent construction of those areas because the homeowners association would receive the benefits of the litigation).

Furthermore, the parties disagree about what date during the assessment and appeal process a litigant must own his or her property in order to satisfy Section 138.430. The Assessor claims that "the time of the appeal" is the required date for ownership, while the Developers argue it is the lien date.

Mandating the required dates of ownership for purposes of satisfying Section 138.430.1 is outside the scope of this appeal. However, the ownership timeline in this case supports the Developers contention that they are the real parties in interest. The Developers owned the property in January 2005, and also on the reassessment date. Furthermore, the Assessor mailed the reassessment notices to the Developers in March 2005, and the Developers still owned the property at that time. Given the proration agreements and that the Developers owned the property through June 2005, we conclude that the Commission erred in holding that the Developers were not real parties in interest. Points one and two are granted.

■ In their third point on appeal, Herky argues that the Commission erred in dismissing 32 of their appeals because Herky's delinquent payment of certain property taxes did not moot those appeals. We agree.

■ Section 139.031.1–4 allows Missouri taxpayers to pay disputed property taxes under protest and to seek a refund of those taxes. The purpose of the Section is to "furnish an adequate and sufficient remedy to the taxpayer, and ... to warn the tax collector that the tax is claimed to be illegal." *Ford Motor Credit Co. v. St. Charles County Collector of Revenue*, 172 S.W.3d 826, 830 (Mo.App. E.D.2005) (quoting *B&D Inv. Co., Inc. v. Schneider*, 646 S.W.2d 759, 762 (Mo. banc 1983)). Section 139.031 must be strictly construed and enforced. *Ford Motor Co. v. City of Hazelwood*, 155 S.W.3d 795, 798 (Mo.App. E.D. 2005).

The Commission dismissed 32 of Herky's appeals as moot because Herky had paid the property taxes delinquently. According to the Commission, there is "no statutory provision for the escrowing or impounding of delinquent taxes." The Commission reasoned that an amendment to Section 139.031, which added the word "current," allows only current taxes to be the subject matter of a payment under protest. Because Herky had paid its protested taxes delinquently, meaning post-December 31, 2005, the Commission ruled that the collector had no authority to impound the disputed taxes. The collector had already dispersed the funds, and the Commission dismissed Herky's appeals with respect to such properties taxes as moot.

We disagree with the Commission's holding that Section 139.031 does not allow a county collector to impound delinquent taxes that are paid under protest. We find no Missouri case that addresses the issue of impounding delinquent protested taxes, and neither the Commission nor the Assessor has cited one. However, a recent Eastern District decision, *Board of Education of the City of St. Louis v. Daly*, 272 S.W.3d 228 (Mo.App. E.D.2008), is instructive.

The statutory section at issue in both

*Daly* and this case, Section 139.031.3,[3] states:

> Upon receiving payment of current taxes under protest pursuant to subsection 1 of this section *or upon receiving from the state tax commission or the circuit court notice of an appeal from the state tax commission or the circuit court pursuant to section 138.430,* the collector shall [ . . . ] impound in a separate fund all portions of such taxes which are protested or in dispute (emphasis added).[4]

Subsection 1 of Section 139.031, referenced above, states in relevant part: "[a]ny such taxpayer desiring to pay any current taxes under protest shall, at the time of paying such taxes, file with the collector a written statement setting forth the grounds on which the protest is based."

*Daly* was a case of first impression in Missouri. *Id.* at 234. The taxpayers in that case had not paid their taxes under protest pursuant to subsection 1, but had instead filed a notice of appeal with the Commission. *Id.* at 229. The issue was whether that notice of appeal, sent to the collector by the Commission, was a permissible method by which to notify the collector that such taxes were disputed. *Id.* The Court held that it was.

In reaching its decision, the *Daly* Court relied on the legislature's intent when it added the emphasized phrase above: "or upon receiving notice of an appeal pursuant to section 138.430" to Section 139.031.3. *Id.* at 233. The Court reasoned: "[w]hen an amendment is made to a statute, specifically by adding an option with the word "or," as in this case, the proper construction is that there is now an alternative to what was formerly an exclusive

method." *Id.* at 236. As such, *Daly* held that a taxpayer can protest taxes either by paying under protest pursuant to subsection 1, or by filing an appeal. *Id.* at 236.

*Daly's* holding is instructive to this appeal because of the independent meaning it gives to the phrase at issue: "or upon receiving notice of an appeal. . . ." *Daly* teaches that Section 139.031.3 affords a taxpayer two separate and independent methods to alert the collector that he or she is protesting taxes. The first method, pursuant to subsection 1, requires the taxpayer to pay the current taxes and to attach a notice of protest. The second method allows the taxpayer to file a notice of appeal pursuant to 138.430. Instructively, the second method does not reference "current taxes." Regardless of which method is used, the subsection directs that the collector "shall" impound the disputed funds upon receiving notice that a taxpayer is disputing the taxes. *See* RSMo Section 139.031.3.

In this case, the Developers complied with the tax protest statutes by filing an appeal, and the Commission notified the collector of that appeal. The record reveals that the Commission sent letters to the Developers in September 2005 which stated, in relevant part: "[w]e are also sending notice to the county collector that you have filed this appeal so that payment of your taxes will be considered to be a payment under protest." The Developers did not make their first disputed tax payment until January 2006, and their final disputed payment until March 2007.

Thus, the record reveals that the Developers complied with Section 139.031 by

---

**3.** The subsection was actually 139.031.2 in *Daly* but the statutory language was nearly identical. Most importantly, the statute in *Daly* used the word "current" to refer to taxes. *See Daly,* 272 S.W.3d at 233.

**4.** In *Daly,* the emphasized section simply read "or upon receiving notice of an appeal pursuant to Section 138.430." *Daly,* 272 S.W.3d at 233.

appealing the disputed taxes to the Commission in 2005. Pursuant to the statutory interpretation advanced in *Daly*, the collector was required to impound the disputed taxes after he received them. The Commission erred in dismissing 32 of Herky's appeals as moot. Point granted.

Because we granted Developers' points one and two, it is not necessary to address their point four.

### III. CONCLUSION

The Commission's judgment is reversed and remanded for proceedings consistent with this opinion.

LAWRENCE E. MOONEY and GEORGE W. DRAPER III, JJ., Concur.